## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CHARLES L. MAROHN, JR.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE MINNESOTA BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE ARCHITECTURE, GEOSCIENCE, AND INTERIOR DESIGN, and THE BOARD'S MEMBERS, Paul Vogel, Chair, Dave Blume, Vice Chair, Wayne Hilbert, Meg Parsons, Tari Rayala, Nirmal Jain, Denise Kazmierczak, Daniel Kelsey, Melisa Rodriguez, Dan Baar, Scott Robinson, Graham Sones, Keith Rapp, Robert Whitmyer, Erica Larson, Claudia Reichert, Rachel Dwyer, Eric Friske, Scott Holm, Jami Neiber, and David Stenseth, in their official capacities, or their successors,<br><br>　　　　　　Defendants. | Case No. _____<br>Judge _____<br>Demand for Jury Trial<br><br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

## INTRODUCTION

1.　　Plaintiff Charles L. Marohn, Jr. is a Minnesota licensed professional engineer.  In 2009, Marohn founded Strong Towns, a Minnesota non-profit corporation.  Strong Towns is dedicated to educating the general public regarding local government decisions on land use, capital investment, and community development, and how those decisions can result in insolvency or fiscal pressure on the local government.  A necessary consequence of local governments adhering to the insights Strong Towns provides is that construction and professional engineering businesses will earn less in

revenues from public infrastructure projects.  Not surprisingly, Mr. Marohn's work with Strong Towns has not made him popular with many professional engineering businesses and related trade associations and organizations.

2.      Mr. Marohn has maintained his license as a professional engineer under Minn. Stat. §326.02 with the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design (the "Board") since 2000 despite the fact that Mr. Marohn had not practiced engineering, performed any work as an engineer or offered to perform work as an engineer since 2012.  In 2016, Mr. Marohn moved to a new address and did not receive the biennial notice from the Board to renew his license.  As a result, Mr. Marohn did not renew his biennial registration even though Mr. Marohn continued to pay to attend continuing education classes in professional engineering in order to maintain his license.  When Mr. Marohn realized his license had lapsed in 2020, Mr. Marohn simply needed to submit his registration materials to the Board to reinstate his license. Mr. Marohn did so and the Board reinstated his professional engineering license in 2020.

3.      One month after reinstating Mr. Marohn in 2020, the Board notified Mr. Marohn that a complaint had been filed against him by a professional engineer from another state expressing concern over the advocacy of Strong Towns and stating that Mr. Marohn had referred to himself as a "professional engineer" on the Strong Towns website, during speaking engagements and in Strong Town publications.  Despite the fact that the Board acknowledged that Mr. Marohn had not engaged in providing any engineering services to anyone during the period in which his license was lapsed, the

Board has threatened to take action against Mr. Marohn unless Mr. Marohn enters into a stipulated settlement in which Mr. Marohn would have to agree that he violated Minnesota law and had engaged some form of dishonesty and misrepresentation even though the Board has not alleged Mr. Marohn engaged in any professional engineering practice.

4.      The Board threatened actions against Mr. Marohn violates Mr. Marohn's right to free speech, free association and to petition the government under the First Amendment and violates Mr. Marohn's right to be free from retaliation for exercising his First Amendment rights because the Board is threatening to discipline Mr. Marohn because of Mr. Marohn's work on Strong Towns.

5.      Mr. Marohn brings this civil-rights lawsuit under 28 U.S.C. § 2201(a) and 42 U.S.C. § 1983 to challenge the constitutionality of certain provisions of Minn. Stat. §326.01 *et seq.* and Minnesota Rules 1800 and 1805 and the Board's retaliation against Mr. Marohn for exercising his First Amendment rights.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over the Plaintiff's claims under the following provisions of law:

  a.   U.S. Const. amend. I (guaranteeing freedom of speech, freedom of association and right to petition the government);

  b.   U.S. Const. amend. XIV (making the First Amendment applicable to the states);

3

      c.     42 U.S.C. § 1983 (creating a remedy for a violation of a federal right under color of state law);

      d.     28 U.S.C. § 1331 (conferring this Court's federal-question jurisdiction); and

      e.     28 U.S.C. § 2201(a) (conferring this Court's declaratory-judgment jurisdiction).

7.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(b)(1), (2), and (3) because all the Defendants are Minnesota officials and reside within this District, and because the events or omissions giving rise to the Plaintiff's claims occurred within this district.

## PARTIES

### Plaintiff

8.     Plaintiff Charles L. Marohn, Jr. resides at 616 North 4th Street, Brainerd, MN. 56401.

### Defendants

9.     The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design (the "Board") is located at 85 E. 7th Place, Suite 160 St. Paul, MN 55101-2113. The individual Defendants constituting the Board are Paul Vogel, Chair; Dave Blume, Vice Chair; Wayne Hilbert; Meg Parsons; Tari Rayala; Nirmal Jain; Denise Kazmierczak; Daniel Kelsey; Melisa Rodriguez; Dan Baar; Scott Robinson; Graham Sones; Keith Rapp; Robert Whitmyer; Erica Larson; Claudia Reichert; Rachel Dwyer; Eric Friske; Scott Holm; Jami Neiber;

and David Stenseth, or their successors. The individual Defendants are sued in their official capacities only.

## FACTS

### A. Background.

10.     Plaintiff Charles L. Marohn, Jr. is a Minnesota licensed professional engineer, an urbanist, a land-use planner, an author, and a public speaker.

11.     Mr. Marohn earned a bachelor's degree in civil engineering from the University of Minnesota in 1995 and a Masters of Urban and Regional Planning in 2004 from the University of Minnesota.

12.     Mr. Marohn obtained a license from the Board to practice as a professional engineer on February 8, 2000.

13.     Shortly after licensure in 2000, Mr. Marohn started his own professional planning and engineering firm, Community Growth Institute, LLC.  Community Growth Institute, LLC engaged in both professional planning and engineering working exclusively on behalf of local governments.

14.     During the next ten years, Mr. Marohn found that local governments were spending monies on infrastructure which were a waste of money and were making the communities those local governments represented poorer.

15.     As a result, in 2009, after representing local governments as a practicing professional engineer and land use planner, and experiencing frustration with the amount of taxpayer monies local governments wasted on transportation, infrastructure, and development projects, Mr. Marohn founded Strong Towns, a nonprofit corporation based

in Minnesota that advocates for, among other reforms, local governments to spend less

taxpayer dollars on construction and infrastructure projects. Marohn phased out his

private practice and closed Community Growth Institute, LLC in 2012.

16.     Strong Towns advocates an approach to urbanism that avoids the

construction of unnecessary infrastructure and hence the costs of building and

maintaining unnecessary infrastructure.

17.     Strong Towns provides education and information to the public, both in

and out of Minnesota, in an effort to assist the public in being better advocates for

appropriate infrastructure projects in their localities.

18.     Strong Towns maintains a website that provides news and commentary

related to urbanism, urban planning, land-use planning, and infrastructure projects.

19.     Mr. Marohn is the author of *Strong Towns: A Bottom-Up Revolution to

Rebuild American Prosperity*, published by Wiley & Sons in 2019.

20.     In addition, Mr. Marohn is also the author of the soon to be published book

*Confessions of a Recovering Engineer: A Strong Towns Approach to Transportation*,

published by Wiley and Sons.

21.     Mr. Marohn is well known and broadly respected throughout the fields of

urbanism, planning, and engineering. Mr. Marohn's work is broadly cited. In 2017, Mr.

Marohn was voted one of the ten "most influential urbanists of all time" by the urbanist

website Planetizen.

22.     Mr. Marohn has not been a practicing engineer since 2012. Since 2012, Mr.

Marohn has not signed any engineering documents, prepared any plans or specifications

requiring licensure, overseen anyone who practices engineering, worked on any engineering projects, or undertaken any professional action that created any threat to the health, safety, and welfare of the public.  Further, since 2012, Mr. Marohn has not applied for any work as an engineer nor used his credentials to seek work as a professional engineer. The work Mr. Marohn is currently engaged in does not require any type of licensure including a professional engineering license.

### 3.  Mr. Marohn's Minnesota Professional Engineering License Expires; When Mr. Marohn Becomes Aware of This, He Renews His License.

23.     Under Minn. Stat. §326.10, professional engineering licenses expire on June 30th in each even year.  After initially obtaining a license, Minnesota licensed professional engineers must renew their professional engineering licenses by June 30th each even year by submitting a renewal application and a $120 renewal fee.  *A copy of the Board's application form is attached as Exhibit 1.*  The Board issues the professional engineering license for a period of two years.  During this two-year period, the licensed professional engineer must attend 24 hours of certified continuing education classes including at least two hours in ethics in order to renew the professional engineering license.

24.     Prior to June 30, 2016, Mr. Marohn applied for renewal of his professional engineering license and the Board issued Mr. Marohn a two-year professional engineering license effective July 1, 2016.

25.     Because Mr. Marohn did not receive any notice reminding Mr. Marohn to renew his license prior to June 30, 2018, coupled with Mr. Marohn no longer engaging in the practice of professional engineering, Mr. Marohn did not remember to renew his

professional engineering license on June 30, 2018.  As a result, Mr. Marohn's

professional engineering license expired on July 1, 2018.

26.     Mr. Marohn did not become aware that his professional engineering

license had lapsed until June 9, 2020 when another employee of Strong Towns,

Michelle Erfurt, alerted Mr. Marohn that the Board's website indicated Mr. Marohn's

license was expired.  On that same day, Mr. Marohn submitted an application to

reinstate his license.

27.     Presumably because licensed professional engineers frequently fail to

renew their professional engineering licenses in a timely manner, the Minnesota State

Legislature enacted a specific statutory provision providing for professional engineers

to reinstate their licenses.  Minn. Stat. §326.10 subd. 9 specifically provides:

> A licensee or certificate holder whose license or certificate has expired may
> reinstate the expired license or certificate by satisfying all prior continuing
> education requirements to a maximum of 48 professional development hours, by
> paying all of the renewal fees due for all prior renewal periods that the license or
> certificate was expired and the current renewal period, and paying a delayed
> renewal fee in the amount set by the board.

28.     Because Mr. Marohn had simply not remembered to renew his license on

June 30, 2018, but otherwise believed that he had renewed his license, Mr. Marohn had

completed all of the 48 continuing professional development hours for the 2016-2020

period in order to have a professional engineering license renewed.  In addition,

because Mr. Marohn would have to renew his professional engineering license three

weeks later by June 30, 2020, Mr. Marohn simultaneously submitted his renewal

application for the years 2020-2022.  Once again, because Mr. Marohn had simply not

remembered that he had failed to renew his license on June 30, 2018, but otherwise

8

believed that he had renewed his license, Mr. Marohn had completed all of his 24 continuing professional development hours for the 2018-2020 period as well.  In submitting his application to reinstate his professional engineering license, Mr. Marohn also paid all fees and late fees due.  As a result, the Board reinstated Mr. Marohn's professional engineering license for 2018-2020 and issued a renewal license for 2020-2022 on or about June 19, 2020.

29.     Between July 1, 2018 and today, Mr. Marohn did not work as a professional engineer, did not oversee anyone working as a professional engineer, did not sign any documents or have any involvement with any project requiring licensure, and did not solicit any work or represent himself as a professional engineer in order to gain employment or practice engineering.

**B. David D. Dixon, an Engineer Residing in South Dakota, Files a Complaint Against Mr. Marohn with the Board.**

30.     On March 5, 2020, an individual named David D. Dixon filed a complaint with the Board against Mr. Marohn based exclusively on Mr. Marohn not having a license from July 1, 2018 through March 5, 2020.  David D. Dixon is an engineer living in Box Elder, South Dakota.  Mr. Marohn has given talks in South Dakota on behalf of Strong Towns making arguments some professional engineers may perceive as against the economic interests of engineers.

31.     Despite the fact that the Board had received notification of the Complaint on March 5, 2020, the Board failed to notify Mr. Marohn of the Complaint until July 24, 2020 – more than one month after the Board had renewed Mr. Marohn's professional engineering license.

9

32.     *A copy of David Dixon's complaint, together with the accompanying documents that the Board sent Mr. Marohn, is attached as Exhibit 2.*

33.     The complaint specifically states that it was submitted as retaliation for Mr. Marohn's political advocacy—and thus for protected First Amendment activity:

  a. The complainant introduces the complaint by explaining that the complainant became interested in Mr. Marohn's licensure history as a result of reading an article Mr. Marohn authored and posted on Strong Towns website entitled "Four Ways Traffic Engineers Thwart Public Will";

  b. Complainant states in the article Mr. Marohn asserted that his professional engineering license had been challenged because of his political advocacy;

  c. Complainant then states he was "curious" about Mr. Marohn's assertion and, as a result, complainant undertook complainant's own investigation of Mr. Marohn's claims by investigating Mr. Marohn's licensure history on the Board's website;

  d. Complainant then states that "Mr. Marohn talks about being a policy expert, the type that reads law and ordinances," and that Mr. Marohn must thus have known that describing himself as a professional engineer was illegal;

  e. The complainant concludes the complaint by asking the Board "to send a clear message that frauds of this sort will not be tolerated," even though

the complainant offers no evidence that Mr. Marohn realized that his license had expired;

f.  The complainant never even mentioned the possibility that Mr. Marohn did not realize that his license had lapsed;

g.  The Complainant failed to specify in any way that Mr. Marohn had practiced engineering without a license; and

h.  Rather, the entire complaint was that Mr. Marohn had identified himself as a "professional engineer" on Strong Towns website, in publications and at speaking engagements.

**C.  Mr. Marohn Attempts to Resolve the Complaint with the Board.**

34.     Pursuant to Minn. Stat. §326.111, the Board must establish a complaint committee to investigate complaints made to the Board ("Complaint Committee").  In their July 24, 2020 letter (Exhibit 2), the Complaint Committee requested that Mr. Marohn respond to four questions:  (i) copies of documents showing positions Mr. Marohn held in Minnesota from July 1, 2018 to June 17, 2020; (ii) a listing of all Minnesota projects Mr. Marohn worked on, along with the total hours worked, from July 1, 2018 to June 17, 2020; (iii) a listing of all plans Mr. Marohn signed as a Minnesota professional engineer from July 1, 2018 to June 17, 2020; and (iv) a statement of all steps Mr. Marohn took to "rectify the matter" once he became aware that his license had expired.  The Complaint Committee's initial letter properly focused on whether Mr. Marohn had engaged in any professional engineering services during the period where his license had lapsed.

35.     After receiving a copy of the complaint from the Complaint Committee, Mr. Marohn responded to the Complaint Committee's letter four days later by sending the Complaint Committee a July 28, 2020 letter.  *A copy of Mr. Marohn's July 28, 2020 letter is attached as Exhibit 3.*

36.     In his July 28, 2020 response, Mr. Marohn first confirms that he did not engage in any professional engineering work from July 1, 2018 to June 17, 2020. Therefore, Mr. Marohn informed the Complaint Committee that there were no engineering projects he worked on or plans he signed from July 1, 2018 to June 17, 2020.

37.     The Complaint Committee responded to Mr. Marohn in a letter dated November 3, 2020 along with a proposed stipulation and order. *A copy of the Complaint Committee's November 3, 2020 letter and proposed stipulation and order is attached as Exhibit 4.*

38.     In its November 3, 2020 letter and stipulation, the Complaint Committee had now shifted its focus from any professional engineering work Mr. Marohn had performed to simply whether Mr. Marohn had referred to himself as a professional engineer in any circumstances.  The Complaint Committee asserted that it had "determined" Mr. Marohn violated Minn. Stat. §326.02, subd. 1 and 3 and Minnesota Rules 1805.0200 subps 1 (B), 2, and subp. 4 (C) and that the Complaint Committee would recommend disciplinary action by the Board.  Minn. Stat. §326.02 subd. 1 and 3 prohibit a person from providing professional engineering services in Minnesota without a professional engineering license.  In addition, these subdivisions also prohibit a person from referring to himself as a professional engineer.  In its November 3, 2020 letter, the

Complaint Committee interpreted these sections as prohibiting a person from referring to himself as a professional engineer to the public in any circumstances – even those unrelated to professional engineering.  In other words, according to the Complaint Committee, a person would violate these subdivisions if a person referred to himself as a professional engineer at a public gathering completely unrelated to providing any engineering services.  Moreover, Minnesota Rule §1800.0200 subps 1 (B), 2, and subp. 4 (C) prohibit licensees from being "[un]truthful in all professional documents;" making "a false statement or fail to disclose a material fact requested in connection with an application for certification, licensure, or renewal in this state or any other state;" or "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"

39.     As explained in the November 3, 2020 letter, the Complaint Committee proposed that Mr. Marohn sign—and agree to—the proposed stipulation and order as an alternative to the Board issuing an Order against Mr. Marohn.

40.     In its proposed stipulation, the Complaint Committee demanded that Mr. Marohn agree that he violated Minn. Stat. §326.02, subd. 1 and 3 solely by "using the title professional engineer on his website, in publications, and in biographies for speaking engagements."  Furthermore, the Complaint Committee demanded that Mr. Marohn stipulate that he violated Minnesota Rules 1805.0200 subps 1 (B), 2, and subp. 4 (C) by "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation" when Mr. Marohn completed his reinstatement and renewal applications.  These applications required Mr. Marohn to certify:

> I have not represented myself as an architect, professional engineer, land surveyor, landscape architect, professional geologist, professional soil scientist, or certified

interior designer, without proper licensure or certification, either verbally or on any printed matter, in the State of Minnesota, nor will I do so until such time as my license or certificate has been issued by the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience and Interior Design;

41.    Mr. Marohn interpreted this certification to mean that Mr. Marohn had not represented himself as a professional engineer in connection with providing, or offering to provide, professional engineering services in Minnesota as opposed to engaging in public advocacy speech.  The Complaint Committee asserted that Mr. Marohn would have violated this certification if he represented he was a professional engineer on the website of the non-profit corporation Mr. Marohn founded, Strong Towns.

42.    Finally, the stipulation specifically provided that Mr. Marohn would agree that he had made a false statement of fact on the renewal application.  In addition, the stipulation provided that Mr. Marohn would agree to a reprimand and censure, pay a $1,500 civil penalty and agree to take two hours of ethics classes.

43.    Mr. Marohn responded to the Complaint Committee in a November 17, 2020 letter.  *A copy of Mr. Marohn's November 17, 2020 letter is attached as Exhibit 5.* In his November 17, 2020, Mr. Marohn again acknowledged that his professional engineering license had lapsed.  However, Mr. Marohn would not agree to any stipulation finding that he engaged in any type of fraud, dishonesty or misrepresentation based on Mr. Marohn stating he was a professional engineer in situations which did not involve providing or offering to provide professional engineering services. Mr. Marohn proposed modifications to the findings of fact to show that Marohn renewed his lapsed license before being made aware of David D. Dixon's complaint.

44.     The Complaint Committee responded to Mr. Marohn's November 17, 2020 letter by a December 17, 2020 letter.  *A copy of the Complaint Committee's December 17, 2020 letter is attached as Exhibit 6.*  Along with the December 17, 2020 letter, the Complaint Committee enclosed a revised stipulation in which the Complaint Committee increased the sanctions on Mr. Marohn by now demanding Mr. Marohn stipulate that he engaged in "conduct involving dishonesty or misrepresentation by claiming to be a licensed professional engineer while his license was expired."  Once again, the Complaint Committee demanded that Mr. Marohn agree to a reprimand and censure and a $1,500 civil penalty.

45.     At this point, Mr. Marohn hired an attorney, Kristine Kubes, to represent him.  Ms. Kubes initially sent a December 31, 2020 letter to the Complaint Committee requesting until January 19, 2021 to respond to the Complaint Committee's December 17, 2020 letter.  On January 19, 2021, Ms. Kubes sent the Complaint Committee a January 19, 2021 letter responding to the Complaint Committee's December 17, 2020 letter.  *A copy of Ms. Kubes January 19, 2021 letter is attached as Exhibit 7.*  In her letter, Ms. Kubes analyzes the issues and explains to the Complaint Committee that under Minnesota law Mr. Marohn did not commit any type of "fraud" or "dishonesty" which would require Mr. Marohn to have intended to engage in the fraud or dishonesty.  Ms. Kubes letter further cited other disciplinary actions the Board has taken when professionals fail to timely renewal their license applications.  In those instances, the Board did not demand that the professionals stipulate they engaged in fraud even though those professionals were practicing in their licensed profession and their actions did

potentially threaten the public health safety and welfare.

46.     In response to Ms. Kube's January 19, 2021 letter, the Complaint

Committee sent Ms. Kubes a February 17, 2021 letter inviting Mr. Marohn and Ms.

Kubes to attend a conference before the Complaint Committee on March 10, 2021 via a

remote video meeting over the internet.  *A copy of the Board's February 17, 2021 letter

is attached as Exhibit 8.*  During this conference meeting:

a.      The Complaint Committee chair, Keith Rapp, stated he was concerns over

reference to Mr. Marohn's engineering credentials during Mr. Marohn's public

speaking appearances, specifically "Tedx, "The American Conservative", and

"Talks on Google."

b.      Paul Vogel, a member of the Complaint Committee, stated his concern that

people listening to Mr. Marohn speak during his public advocacy listeners may

rely more on what Mr. Marohn is advocating based on Mr. Marohn stating he is a

professional engineer.

c.      Eric Friske, a member of the Complaint Committee, questioned Mr.

Marohn about how credentials are represented in a spoken podcast format.

47.     At this remote conference, there were no representations or allegations of

Mr. Marohn having engaged in any engineering work, or offering to engage in any

engineering work, during the period Mr. Marohn's professional engineering license had

lapsed.

48.     After the conference, the Complaint Committee sent Ms. Kubes a March

17, 2021 letter. with another draft stipulation.  *A copy of the Complaint Committee's*

*March 17, 2021 letter and proposed Stipulation are attached as Exhibit 9.* The updated stipulated order contained findings that omitted key facts in a way that is prejudicial to Mr. Marohn and maintains assertions that Mr. Marohn made an "untruthful statement," a "false statement," and engaged in "conduct involving misrepresentation."

49.     Ms. Kubes responded to the Complaint Committee in a March 23, 2021 letter. *A copy of Ms. Kubes' March 23, 2021 letter is attached as Exhibit 10.* Ms. Kubes once again reiterated that Mr. Marohn would not agree to any stipulation stating that Mr. Marohn engaged in any type of dishonesty or misrepresentation. Ms. Kubes indicated that Mr. Marohn will sign a stipulated order acknowledging the use of the term "professional engineer" in Mr. Marohn's biography during the lapse in licensure and agree to a reprimand and a $500 civil penalty if the Board will remove assertions that Mr. Marohn made an "untruthful statement," a "false statement," and engaged in "conduct involving misrepresentation" and if the Board will update the findings of fact to indicate that Marohn applied for and received renewal of his professional engineering license prior to being notified of the complaint from David Dixon.

50.     The Complaint Committee responded in an April 20, 2021 letter. *A copy of the Complaint Committee's April 20, 2021 letter is attached as Exhibit 11.* In the April 20, 2021 letter, the Complaint Committee rejected all changes to the proposed stipulated order that were requested by Mr. Marohn. The letter threatened that the further action against Mr. Marohn if he did not agree to sign the order.

51.     Because the Board, through the Complaint Committee, is continuing to threaten to discipline Mr. Marohn (i) based on Mr. Marohn referring to himself as a

professional engineer outside of providing or offering to provide professional engineering

services and (ii) threatening to discipline Mr. Marohn based on Mr. Marohn's public

policy activities which are counter to the economic interests of professional engineers,

Mr. Marohn has commenced this action against the Board and its members in their

official capacity for violation of Mr. Marohn's civil rights under 42 U.S.C. §1983.

**COUNT I**
**First Amendment As-Applied Challenge:**
**Minn. Stat. Ch. 326 Violates Mr. Marohn's Civil Rights under 42 U.S.C. §1983 by**
**Violating Mr. Marohn's First Amendment Right to Free Speech.**

52.     Mr. Marohn incorporates this complaint's previous paragraphs by

reference.

53.     Minn. Stat. §326.02 prohibits any person from referring to themselves as a

professional engineer in Minnesota unless the Board has issued the person a professional

engineering license.

54.     Minn. Stat. §326.02's prohibition on persons referring to themselves as a

professional engineer in Minnesota unless the Board has issued the person a professional

engineering license is not limited to situations where the person is either engaging in

providing professional engineering services or offering to provide professional

engineering services.

55.     Minn. Stat. §326.02's prohibition on persons referring to themselves as a

professional engineer in Minnesota unless the Board has issued the person a professional

engineering license in situations not involving either the person providing professional

engineering services or offering to provide professional engineering services violates the

First Amendment's Free Speech guarantee.

18

56.     More specifically, the Board's threat to sanction Mr. Marohn under Minn. Stat. §326.02, through Minn. Stat. §326.111 subd. 4, based on Mr. Marohn referring to himself as a professional engineer in conjunction with Mr. Marohn's public policy advocacy work violates the First Amendment's Free Speech guarantee.

## COUNT II
### First Amendment Retaliation Claim:
### The Board's Enforcement Action Is Retaliation Against Mr. Marohn for Protected Speech

57.     Mr. Marohn incorporates this complaint's previous paragraphs by reference.

58.     The Board is threatening to enforce Minn. Stat. §326.02 and Minnesota Rule 1805.0200 against Mr. Marohn because Mr. Marohn advocates against the interests of professional engineers.

59.     The Board's threatened action against Mr. Marohn in retaliation against Mr. Marohn exercising his First Amendment rights to free speech, free association and petitioning the government.

60.     As a result of the Board threatening to sanction and fine Mr. Marohn as retaliation for Mr. Marohn exercising his First Amendment rights to free speech, free association and petitioning the government, Mr. Marohn is entitled to a declaratory judgment and injunction against the Defendants.

### DEMAND FOR JURY TRIAL

The Plaintiff hereby requests a jury trial on all claims triable by a jury.

### PRAYER FOR RELIEF

Therefore, to redress the injuries caused by the Board, Mr. Marohn requests the

following relief:

      a.      a declaration that Minn. Stat. §326.02 and Minnesota Rule 1800.0200 is unconstitutional as applied to Mr. Marohn;

      b.      an injunction against the Defendants from enforcing either Minn. Stat. 326.02 or Minnesota Rules 1800.0200;

      c.      an award of attorneys' fees, including attorneys' fees under 42 U.S.C. § 1988(b), and any other appropriate statutes;

      d.      an award for reasonable and customary costs, expenses, and pre-judgment, and post-judgment interest; and

      e.      any other legal or equitable remedy available to the Court that it thinks is just.

Dated: May 18, 2021

*/s/William F. Mohrman*
William F. Mohrman, #168816

Mohrman, Kaardal & Erickson, P.A.
150 South 5th Street, Suite 3100
Minneapolis, MN 55402
Telephone: 612-341-1074
Facsimile:  612-341-1076
Email: mohrman@mklaw.com
*Attorneys for the Plaintiff*