UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles L. Marohn, Jr., | Case No. 21-CV-01241 (JRT/LIB) |
| Plaintiff, | |
| v. | **DEFENDANTS' MEMORANDUM SUPPORTING DISMISSAL** |
| The Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design, et al., | |
| Defendants. | |

Plaintiff Charles Marohn concedes that he falsely held himself out to the public as a licensed professional engineer for almost two years after failing to renew his license. When he finally renewed his license, he falsely certified to Defendant Minnesota Board of Architecture, Engineering, Land Surveying, Landscape Architecture, Geoscience, and Interior Design that he had not represented himself as a professional engineer while he was unlicensed. Based on these facts, the Board's complaint committee investigated Marohn and attempted to informally resolve allegations that he unlawfully held himself out as a professional engineer while unlicensed and included a false certification on his renewal application. After settlement negotiations broke down, and in an apparent attempt to thwart formal disciplinary action, Marohn filed this action against the Board and its twenty-one members, alleging that they violated the First Amendment by infringing on his speech and allegedly retaliating against him. The Court should dismiss the complaint pursuant to the *Younger* abstention doctrine because Marohn can raise these issues through the state-level

administrative and appellate processes in the pending state-level proceedings against him. Alternatively, the Court should dismiss because Marohn had no First Amendment right to falsely hold himself out as a professional engineer and he has failed to plead facts supporting his retaliation claim.

## FACTS

The Board is the state agency in Minnesota with the authority to license and regulate architects, engineers, land surveyors, landscape architects, geoscientists, and interior designers. *See* Minn. Stat. §§ 326.02–.15 (2020). The Board has twenty-one members : three architects, five professional engineers, two landscape architects, two land surveyors, two certified interior designers, two geoscientists, and five public members. *Id.* § 326.04. The Board is required to investigate complaints that allege or imply a violation of a law that the Board is empowered to enforce. *Id* §§ 214.01, subd. 3, .10, subds. 1–3 (2020). To do so, the Board has established a complaint committee, which is currently comprised of one architect, one professional engineer, one land surveyor, one professional geologist, and one public member. Minn. Bd. AELSLAGID, *Board Members*, https://www.mn.gov/aelslagid/board.html (last visited June 4, 2021).

The Board issued Marohn a professional engineer license in 2000. (Compl. ¶ 12, Doc. 1.) Marohn's license lapsed due to non-renewal on July 1, 2018, and remained inactive for almost two years, until June 19, 2020. (*Id.* ¶¶ 25, 28.) Despite lacking the requisite license, Marohn nevertheless repeatedly and falsely held himself out as a professional engineer licensed by the Board during that period. (*Id.* Ex. 2 at 9–14, 16–17.) On June 9, 2020, Marohn submitted professional-engineer-license-renewal applications to

the Board for 2018-20 and 2020-22. (*Id.* ¶ 26.) In his applications, Marohn falsely certified that he had "not represented [him]self as a[] . . . professional engineer . . . without proper licensure or certification, either verbally or on any printed matter, in the state of Minnesota." (*Id.* ¶¶ 40–41.)

After the Board renewed Marohn's license, its complaint committee investigated whether Marohn held himself out as a professional engineer while his license was expired. (*Id.* ¶ 28; Ex. 2 at 1–4.) Following Marohn's admission to the committee that he falsely represented himself as professional engineer licensed by the Board while his license was expired (*id.* Ex. 3 at 2), the committee expanded its investigation to include whether Marohn made false certifications in his renewal applications. (*Id.* Ex. 4 at 4.)

After Marohn retained counsel, the committee attempted to negotiate a settlement of its regulatory allegations against Marohn. (*See generally id.* ¶¶ 34–50.) In March 2021, the committee commenced a formal conference pursuant to Minn. Stat. §§ 214.10 and 326.111 to afford Marohn the opportunity to appear and respond to allegations that he held himself out as a licensed professional engineer while his license was inactive. (*E.g.*, *id.* ¶ 46, Ex. 8.) Following the conference, the committee proposed a settlement agreement imposing a reprimand, a $500 penalty, and completion of two ethics hours. (*Id.* Ex. 11 at 1, 5–6.) The committee further notified Marohn that it would commence a disciplinary proceeding at the Minnesota Office of Administrative Hearings (OAH) if he did not accept

the offer by May 18.¹ Marohn implicitly rejected the committee's offer and attempted to thwart the commencement of an administrative proceeding by filing this case on the last day to accept its proposed settlement. (Compl.)

As it had previously notified Marohn, the committee has since commenced a contested-case proceeding at OAH, with a prehearing conference set for July 1, 2021. *See* Notice & Order for Prehearing Conference, *In re Prof'l Eng'r License of Marohn*, No. 60-1006-37594 (Minn. OAH June 3, 2021).²

## ARGUMENT

Marohn claims that the law prohibiting him from falsely holding himself out as a professional engineer violates his First Amendment rights and that the committee's subsequent settlement offers are somehow retaliatory for his alleged public advocacy work. The Court should abstain from hearing Marohn's claim under the *Younger* abstention doctrine and allow the Board's regulatory action to proceed unfettered. In the alternative, the Court should dismiss Marohn's claims because people have no First Amendment right

---

¹ While immaterial to this motion, the committee originally gave Marohn a deadline of May 11 and then granted his request for a one-week extension to respond. (*Id.* Ex. 11 at 1.) Marohn chose to omit correspondence related to him requesting and receiving an extension.

² Pursuant to state law, the committee bears the burden of proving its allegations of violations by a preponderance of the evidence. Minn. R. 1400.7300, subp. 5 (2019). After an evidentiary hearing, an administrative law judge issues a recommendation as to factual findings and legal conclusions. *See* Minn. Stat. §§ 14.48–.62 (2020). After the administrative law judge's recommendation, the committee and Marohn will have an opportunity to present written and oral argument to the full Board concerning whether disciplinary action should be taken, and if so, the form of disciplinary action. If the Board issues a final order adverse to Marohn, he may appeal it to the Minnesota Court of Appeals. *See* Minn. Stat. §§ 14.63–.69 (2020).

to falsely claim they are capable of performing professional services they are not legally allowed to perform, and Marohn has not pleaded any facts establishing a retaliatory motive by the Board or its members.

I. **THIS COURT SHOULD DECLINE JURISDICTION UNDER THE *YOUNGER* ABSTENTION DOCTRINE.**

There is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (the principle of "comity" includes "a proper respect for state functions"). Accordingly, the *Younger* abstention doctrine directs federal courts to abstain from adjudicating claims that seek to enjoin ongoing state proceedings. *See Middlesex,* 457 U.S. at 432 (applying *Younger* abstention doctrine to state attorney license disciplinary proceedings); *Younger v. Harris*, 401 U.S. 37, 43–56 (1971) (addressing criminal proceedings) *Zajac v. Stanton*, No. 0:20-cv-02148-JRT-DTS, 2021 WL 720453, at *3 (D. Minn. Feb. 24, 2021) (applying *Younger* abstention doctrine to § 1983 action seeking to enjoin state medical board from continuing ongoing disciplinary proceedings).

Federal courts should abstain from exercising jurisdiction when "(1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe v. Ligon*, 606 F.3d 890, 892–93 (8th Cir. 2010) (citing *Middlesex*, 457 U.S. at 432). *Younger* also applies if state proceedings are begun *after* the initiation of federal proceedings, so long as no "proceedings of substance on the merits" have taken place in

federal court. *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). When these factors are met, federal courts should abstain from exercising jurisdiction except where there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex*, 457 U.S. at 435. Bad faith imposes a high standard, requiring a plaintiff to establish state officials proceeded "without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *Postscript Enterprises, Inc. v. Peach*, 878 F.2d 1114, 1116 (8th Cir. 1989) (holding city attorney's public vow to run adult bookstore out of business insufficient to trigger bad faith prosecution exception). The plaintiff bears the burden of establishing the lack of an adequate opportunity to raise his constitutional claims and bad faith. *Plouffe*, 606 F.3d at 893 (adequate opportunity); *Gates v. Strain*, 885 F.3d 874, 881–82 (5th Cir. 2018) (bad faith).

Applying these principles, the Court should abstain under the *Younger* doctrine. As reflected in the Marohn's complaint, the complaint committee's investigation and regulatory proceeding pre-date this action. After the committee received a complaint against Marohn in 2020, it spent more than a year investigating and attempting to resolve its allegations, including issuing a formal Notice of Conference in March 2021 pursuant to Minn. Stat. §§ 214.10 and 326.111. (*See* Compl. Exs. 2–11.) The committee notified Marohn that it would commence a contested-case proceeding at OAH if he did not accept its settlement offer by May 18. (*Id.* at Ex. 11.) In an apparent attempt to thwart the process, and rather than responding to the offer, Marohn filed this suit that day. The committee has since filed an action at OAH in accordance with the notice it provided to Marohn almost one month before he filed this case. (*Id.*) The mere fact that Marohn filed this case before

6

the committee filed its action at OAH is irrelevant because no proceedings of substance on the merits have occurred in this case. *Hicks*, 422 U.S. at 349. The Court should not condone Marohn's attempt to stymie the committee's enforcement action.

Second, important state interests are at stake. The State of Minnesota has a vitally important interest in regulating the professional conduct of its licensees and the titles they use. *See Middlesex*, 457 U.S. at 434 (recognizing state had "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."); *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1164–65 (10th Cir. 1999) (recognizing states' traditional role in regulating professions and states' strong state interest in licensing and discipline to protect the public). Here, the committee alleges that Marohn falsely held himself out as a professional engineer licensed by the Board for almost two years and then provided false certifications to the Board when he finally renewed his license. The improper use of professional credentials and false representations to a state regulator upon renewing a license are important state interests.

Third, Marohn may raise his constitutional claims in the state action. Should the discipline proceeding result in an adverse result against him, Marohn can seek judicial review and raise constitutional issues on review of the administrative proceeding in the state's appellate courts. Minn. Stat. §§ 14.64, .69; *see also Padilla v. Minn. Bd. of Med. Exam'rs*, 382 N.W.2d 876, 882 (Minn. 1986) (noting Minnesota court of appeals can consider constitutional issues on appeal from administrative proceedings). Thus, Marohn has a well-established opportunity to raise any relevant federal constitutional issues in the state proceeding. *See Zajac*, 2021 WL 720453, * 4 (holding combination of Minnesota

administrative-law process and subsequent appellate review provide adequate opportunity to raise constitutional claims).

Finally, other than a conclusory statement that "the Board" is threatening enforcement due to Marohn's advocacy (all notices regarding pending enforcement thus far have come from the complaint committee, not the full Board), Marohn has not alleged any facts showing that the complaint committee initiated its investigation in bad faith. (Compl. ¶ 58.) Conclusory allegations by Marohn do not suffice to establish bad faith. *Zajac*, 2021 WL 720453, at *5. The Court should, therefore, refrain from exercising jurisdiction and should dismiss Marohn's complaint. There is no basis for contravening established federal policy of not interfering in pending state judicial or administrative proceedings—particularly, one which involves the quintessential state function of public protection through regulation of a professional license.

## II.   MAROHN FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Even if the Court holds that *Younger* abstention is inapplicable, it should nevertheless dismiss Marohn's claims because he failed to state claims for which the Court may grant relief. A motion to dismiss must be granted when the complaint fails to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678. A complaint fails this standard if it fails to plead "factual content" allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Pleading facts that

are "merely consistent" with liability is insufficient, and "threadbare" recitals of elements supported by "mere conclusory statements" are insufficient. *Id.* Although the Court must assume the factual allegations of a complaint are true, it need not defer to any legal conclusions. *Twombly*, 550 U.S. at 555. Here, Marohn's legal conclusion that he has a First Amendment right to falsely hold himself out as a licensed professional engineer is incorrect. In addition, Marohn has not pleaded any facts establishing a retaliatory motive by the Board when its committee proposed multiple settlement offers to resolve pending regulatory allegations.

### A. Marohn Has No First Amendment Right to Falsely Hold Himself Out as a Professional Engineer.

Marohn claims the Board cannot prohibit him from lying about whether he is a licensed professional engineer. (Compl. ¶¶ 52–56.) Marohn is wrong. Although falsehoods are not categorically beyond the reach of the First Amendment, the Supreme Court has long recognized that, in the realm of professional services, people may not falsely claim they are qualified to perform services they are not qualified to perform. The Court should dismiss Marohn's First Amendment free-speech claims because, as a matter of law, the committee's investigation and attempts to informally resolve allegations that he falsely held himself out as a professional engineer did not violate his First Amendment rights.

Using professional titles constitutes commercial speech, which is entitled to less First Amendment protection. *Ibanez v. Fla. Dep't of Bus. & Prof'l Reg., Bd. of Accountancy*, 512 U.S. 136, 144 (1994); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). Thus, untruthful speech, commercial or otherwise, has never been protected

for its own sake. *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). "The First Amendment . . . does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." *Id.* at 772–73. Moreover, because commercial speech relates to particular products or services, it is "more objective [and] hence more verifiable" than other types of speech. *Friedman v. Rogers*, 440 U.S. 1, 10 (1979). Because of these attributes, "[t]he government may ban forms of communication more likely to deceive the public than to inform it." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980).

Minnesota has enacted such legislation prohibiting people from misrepresenting their qualifications when it comes to engineering. No person may hold himself or herself out as being able to perform professional engineering services or refer to himself or herself as a professional engineer or use the initials "P.E." without a professional engineer license. Minn. Stat. § 326.02, subd. 3 (2020). This is a constitutional limitation on speech because it prohibits false claims of qualifications that are more likely to deceive the public than to inform it.

Marohn incorrectly contends that this statute is unconstitutional as applied to him because it reaches beyond instances where someone is "providing professional engineering services or offering to provide professional engineering services." (Compl. ¶¶ 54–55.) Marohn appears to be indirectly suggesting that his speech is not commercial speech. But the Supreme Court has been clear that concrete offers to perform services are not required to make speech commercial speech. Instead, the Court has applied a commercial-speech analysis to questions such as whether businesses can use particular names—despite the fact

10

that there is no specific "offer" inherent in the name alone—and to advertisements promoting the use of a product—despite there being no particular offer with respect to the product. *Friedman*, 440 U.S. at 12 (trade names); *Hudson Gas*, 447 U.S. at 558–59 (ban on advertisements encouraging electricity usage).

*Friedman* is particularly instructive. In that case, the Court addressed a statute that prohibited optometrists from using trade names. *Friedman*, 440 U.S. at 3. The Court first concluded that using a trade name was a form of commercial speech because once the name came to be known in the community it conveyed information about the "type . . . and quality" of services the business could perform. *Id.* at 11. The Court went on to note that the use of such names had the potential to mislead the public because a trade name could imply a quality that simply was not present. *Id.* at 12. Moreover, prohibiting trade names had "only the most incidental effect" on the content of the plaintiffs' commercial speech because the only information the names conveyed was the associations that came to accompany them over time. *Id.* at 15–16. But the regulation did not prohibit conveying any of the underlying factual information of those associations. *Id.* at 16. Because the statute merely ensured that information would be communicated "fully and accurately" and did no more than "require that commercial information about optometrical services appear in such a form as is necessary to prevent its being deceptive," the Court upheld the prohibition. *Id.* Applying *Friedman* and *Hudson Gas*, courts across the country have upheld states laws that prohibit false or misleading use of professional titles. *See, e.g.*, *Maceluch v. Wysong*, 680 F.2d 1062, 1068–70 (5th Cir. 1982) (use of initials "M.D."); *Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602, 605–06 (4th Cir. 1988) (use of term "public

11

accountant"); *Seabolt v. Tex. Bd. of Chiropractic Exam'rs*, 30 F. Supp. 2d 965, 967–69 (S.D. Tex. 1998) (use of term "chiropractic physician"); *Van Breeman v. Dep't of Prof'l Regulation*, 694 N.E.2d 688, 691–92 (Ill. App. Ct. 1998) (use of term "professional engineer").

Minnesota's prohibition on the use of the title "professional engineer" or initials "P.E." by people who are not professional engineers is very similar to the statute sustained in *Friedman*. The statute prohibits people from using a term that conveys a particular level of credential and skill unless they actually possess that credential. The phrase "professional engineer" is a recognized credential in the industry, requiring the completion of the multi-step, multi-year process of (1) passing an eight-hour fundamentals exam, (2) completing four years of progressive experience in a particular engineering field, (3) passing another eight-hour exam testing the knowledge gained during the four-year period, and finally, (4) obtaining and maintaining state licensure. Doug McGuirt, *The Professional Engineering Century*, P.E. MAG., June 2007, at 28[3]; *see also* Minn. R. 1800.2500, .2700 (2019) (laying out Minnesota's education and experience requirements for professional engineer licensure). The title therefore conveys with it a particular level of training, quality, and service, and most importantly, conveys that one is licensed by the state to perform professional engineering.

In light of the associations that "professional engineer" and "P.E." convey—like the associations with a particular trade name noted in *Friedman*—Minnesota has limited the

---

[3] Available at https://www.nspe.org/sites/default/files/resources/pdfs/pemagazine/june2007_the_professional_engineering.pdf.

use of the title "professional engineer" and "P.E." to those who are licensed professional engineers. Minn. Stat. § 326.02, subd. 3. Such regulation aligns with the regulation approved by *Friedman* because it prevents claims of a qualification that is not present. *Friedman*, 440 U.S. at 11. Moreover, like the prohibition in *Friedman*, Minnesota's statute has, at most, "only the most incidental effect on the content of the commercial speech" because unlicensed individuals are still free to factually describe their background, education, experience, or any other relevant qualifications; they simply cannot claim to have a qualification that they lack. *Id.* at 16. Thus, Minnesota's statute does no more than "is necessary to prevent [people] being deceptive." *Id.*

It is true that lies are still protected by the First Amendment in some contexts. *United States v. Alvarez*, 567 U.S. 709, 718 (2012) (plurality opinion). But *Alvarez* is of no help to Marohn. In that case, the Court was dealing with noncommercial speech. *See id.* at 713–14 (examining criminal charges for falsely claiming to have been awarded the Congressional Medal of Honor at a public meeting). But the Court has long held that when it comes to commercial speech, statutes that prohibit falsehood are constitutional. *Hudson Gas*, 447 U.S. at 563; *Friedman*, 440 U.S. at 10; *Va. State Bd. of Pharm.*, 425 U.S. at 771–72. Because Minnesota's prohibition on the use of "professional engineer" and "P.E." is such a statute, the Court should dismiss count one of Marohn's complaint.

**B.     Marohn Failed to Plead Facts Establishing a Retaliatory Motive by the Board.**

Marohn claims the Board threatened to enforce Minnesota laws against him in retaliation for his advocacy activities. (Compl. ¶ 58.) But Marohn has not pleaded *any* facts

establishing a retaliatory motive on the part of the Board or its constituent members. On the contrary, public records show that the Board has uniformly applied the very same statutes to multiple individuals in the last three years alone, regardless of whether they engaged in so-called advocacy activities.[4]

To establish a First Amendment retaliation claim, a plaintiff must show that he engaged in a constitutionally protected activity, that the defendant's actions caused the plaintiff an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity, that the defendant had a retaliatory animus, and that a causal connection exists between the retaliatory animus and the injury. *Scott v. Tempelmeyer*, 867 F.3d 1067, 1070 (8th Cir. 2017). To establish the causal connection, a plaintiff must show that he or she was "singled out" because he or she exercised constitutional rights. *Bernini v. City of Saint Paul*, 665 F.3d 997, 1007 (8th Cir. 2012). This is a "but-for" causation standard, and if the government would have taken the same action even had the person not engaged in the protected First Amendment activity, then the claim fails. *Osborn v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007).

Even assuming Marohn engaged in some type of protected public advocacy, he failed to state a claim as a matter of law because he did not plead factual allegations that make the retaliatory animus or causal-connection elements plausible. Marohn alleges that he engages in advocacy work that has made him unpopular with professional engineering

---

[4] Courts may consider matters of public record, even if outside the pleadings, when considering whether to grant a rule 12(b)(6) motion. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

businesses and trade organizations in general, that a member of the public retaliated against Marohn by complaining about him to the Board, and that members of the Board's complaint committee had concerns about Marohn falsely representing that he was a professional engineer at his public speaking appearances (Compl. ¶¶ 1, 33, 46.) None of these facts establish any motive on the part of the Board or its members.

The only retaliatory motive alleged by Marohn is a retaliatory motive by the complainant, who is not a member of the Board and has no say in whether the Board acts on the complaint or how a Board matter resolves. "[R]egulatory and law enforcement agencies routinely act on the basis of information provided by private parties who harbor a grudge or who hope to benefit personally from their complaints." *Osborne*, 477 F.3d at 1007. Courts do not impute the complainant's ulterior motive to the government actors. *Id.*

Marohn also obliquely suggests a retaliatory intent by noting that, *after* the complaint committee began investigating, his prior attorney sent the committee a letter that cited past cases where the Board did not allege fraud when applicants failed to timely renew their licenses. (Compl. ¶ 45.) The flaws with this argument are threefold. First, as reflected in the source documents Marohn attached to his complaint, the committee never alleged that Marohn engaged in fraud. The committee's four proposed consent orders to Marohn alleged only that he made a false statement on his renewal application, engaged in conduct involving dishonesty or misrepresentation by holding out as a professional engineer while unlicensed, or failed to disclose a material fact on his renewal form. (*Id.* Ex. 4 at 4; Ex. 6 at 4; Ex. 9 at 4; Ex. 11 at 5.) Marohn's claim that he was singled out for allegations of fraud is demonstrably false from the face of the complaint and its accompanying exhibits.

Second, the past cases cited in the attorney's letter are distinguishable from Marohn's case. (*Id.* Ex. 7 at 5.) The letter cites two cases, *In re Sveum*, No. 2020-0017 (Minn. Bd. AELSLAGID June 24, 2020),[5] and *In re Kriens*, No. 2019-0104 (Minn. Bd. AELSLAGID June 24, 2020).[6] But in both cases, the respondents candidly disclosed in their applications that they had represented themselves as having licenses while unlicensed. *Sveum* ¶ 2(e); *Kriens*, ¶ 2(b). Marohn, in contrast, falsely stated on his application that he had not represented himself as a professional engineer while his license was expired.

Third, in the past three years alone the Board has on numerous occasions, imposed discipline for making false certifications on a license application. *See, e.g.*, *In re Kelly*, No. 2021-0017 (Minn. Bd. AELSLAGID Mar. 19, 2021)[7]; *In re Prof'l Eng'r License of Smith*, No. 8-1006-36222 (Minn. Bd. AELSLAGID Mar. 12, 2020)[8]; *In re Brisske*, No. 2019-0057 (Minn. Bd. AELSLAGID Mar. 22, 2019).[9] Thus, prior Board actions do not demonstrate any intent to single out Marohn. Instead, those actions show that, when respondents make misrepresentations on their applications, the Board imposes discipline in order to discourage false applications from others to ensure that it is making licensing decisions based on accurate information. Because Marohn's complaint fails to allege any facts giving rise to a retaliatory motive by the Board, the Court should dismiss count two of Marohn's complaint.

---

[5] Available at https://www.mn.gov/aelslagid/disciplinaryactions/2020/54244.pdf.
[6] Available at https://www.mn.gov/aelslagid/disciplinaryactions/2020/C02502.pdf.
[7] Available at https://www.mn.gov/aelslagid/disciplinaryactions/2021/10926.pdf.
[8] Available at https://www.mn.gov/aelslagid/disciplinaryactions/2020/Smith_Brian.pdf
[9] Available at https://www.mn.gov/aelslagid/disciplinaryactions/2019/Brisske.pdf.

## CONCLUSION

The Court should dismiss Marohn's claims under the *Younger* abstention doctrine. Alternatively, Marohn's claims fail because Marohn has no First Amendment right to hold himself out as licensed to perform professional engineering services when he was not so licensed, and because Marohn has failed to plead any facts that would establish a retaliatory intention by the Board. Accordingly, the Court should dismiss Marohn's complaint in its entirety.

Dated:  June 8, 2021

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


s/**Christopher M. Kaisershot**
CHRISTOPHER M. KAISERSHOT (#0268665)
ALLEN COOK BARR (#0399094)
Assistant Attorneys General

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1487 (Voice)
(651) 297-1235 (Fax)
allen.barr@ag.state.mn.us
christopher.kaisershot@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS