UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHARLES L. MAROHN, JR.,<br><br>Plaintiff,<br><br>v.<br><br>THE MINNESOTA BOARD OF ARCHITECTURE, ENGINEERING, LAND SURVEYING, LANDSCAPE, ARCHITECTURE, GEOSCIENCE, AND INTERIOR DESIGN, and the Board's members, PAUL VOGEL, DAVE BLUME, WAYNE HILBERT, MEG PARSONS, TARI RAYALA, NIRMAL JAIN, DENISE KAZMIERCZAK, DANIEL KELSEY, MELISA RODRIGUEZ, DAN BAAR, SCOTT ROBINSON, GRAHAM SONES, KEITH RAPP, ROBERT WHITMYER, ERICA LARSON, CLAUDIA REICHERT, RACHEL DWYER, ERIC RISKE, SCOTT HOLM, JAMI NEIBER, AND DAVID STENSETH, IN THEIR OFFICIAL CAPACITIES, or their successors,<br><br>Defendant. | Civil No. 21-1241 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

William F. Mohrman, **MOHRMAN, KAARDAL & ERICKSON, PA**, 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402, for plaintiff.

Christopher M. Kaisershot and Allen Bar, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1400, Saint Paul MN, 55101, for defendants.

The Defendants, the Minnesota Board of Architecture, Engineering, Land Surveying, Landscape, Architecture, Geoscience, and Interior Design et al and its

individual members ("the Board"), have moved to dismiss this lawsuit alleging that the Board violated Charles Marohn's First Amendment rights by regulating his use of the term "professional engineer" even though he was not practicing engineering at the time. Immediately after Marohn filed his Complaint, the Board filed a contested case before the Office of Administrative Hearings ("OAH").

The Board asserts that the *Younger* abstention – which restricts the authority of a federal court to handle state matters while a state case is pending — applies here because there is a concurrent state action addressing the same issue and the issue is important to the State of Minnesota. The Court will find that the *Younger* abstention doctrine applies and will grant Defendants' Motion to Dismiss.

## BACKGROUND

**I.   FACTUAL BACKGROUND**

Charles Marohn acquired his engineering license in 2000 and actively practiced engineering for twelve years. (Compl., at ¶¶ 12, 22, May 18, 2021, Docket No. 1.) While practicing, Marohn founded Strong Towns, a non-profit organization that advocates for local governments to spend fewer taxpayer dollars on infrastructure and construction. (*Id*. at ¶ 15.) In 2012, Marohn ceased practicing engineering and dedicated himself to Strong Towns and its message. (*Id.*) Since then, Marohn has published books and given speeches promoting Strong Towns' message. (*Id*. at ¶¶ 10, 19–20.)

Marohn maintained his engineering license until July 1, 2018. (*Id.* at ¶ 25.) In Minnesota, an engineer must renew a license every two years and during this two-year period must attend 24 hours of certified continuing education classes to remain licensed. (*Id.* at ¶ 23.) When Marohn's license was expiring in 2018, he forgot to submit his application for renewal and, as a result, his license expired. (*Id.* at ¶ 25.) Marohn asserts that he did not realize that his engineering license expired until June 2020. (*Id.* at ¶ 26.) He immediately reapplied and was relicensed later that month. (*Id.* at ¶ 28.)

On the relicensing application, Marohn certified that he did not represent himself as an engineer without proper license. (*Id.* at ¶ 41; Ex. 4 at 2, May 18, 2021, Docket No. 1-1.) However, during the 2018-2020 period when he was unlicensed, Marohn referred to himself as a professional engineer in his publications and biographies distributed prior to speaking engagements, which is prohibited by Minn. Stat. § 326.02 subd. 3. (Compl., Ex. 2 at 11–12, May 15, 2021, Docket No. 1-1.)

In March 2020, an individual notified the Board that Marohn referred to himself as a professional engineer while he was unlicensed. (Compl. at ¶ 30.) The Board's Complaint Committee contacted Marohn in July 2020 to investigate whether he performed any engineering work while his license was lapsed. (*Id.* at ¶ 34.) Marohn informed the Board that he had not performed any engineering work during the unlicensed period. (*Id.* at ¶ 36.)

The Committee then sent a letter and settlement offer stating that Marohn had violated Minn. Stat. 326.02 by holding himself out as a professional engineer and practicing engineering and further that he had made a false statement on his reapplication form. (Compl., Ex. 4 at 31, May 18, 2021, Docket No. 1-1.) The settlement stipulation requested that Marohn admit to those violations and pay a $1,500 fine. (*Id.* at 32–33). Marohn refused to sign the stipulation; he believed that he had not violated the statute because he was not actively practicing engineering and he had merely forgotten to reapply for his license. (Compl., Ex. 5 at 38–40, May 18, 2021, Docket No. 1-1.) The Complaint Committee sent another letter and settlement offer with the additional request that Marohn admit toconduct involving dishonesty and misrepresentation. (Compl., Ex. 6 at 42–43, May 18, 2021 Docket No. 1-1.) Marohn's attorney sent a letter to the Complaint Committee stating that he had not violated any statute or rule. (*Id*. at ¶ 45.) The Committee then scheduled a hearing during which Marohn would be able to present his case to the committee members. (*Id.* at ¶ 46.) At the hearing, committee members expressed concern for the consequences of Marohn's actions, noting that his use of the title might engender more trust for his opinions than was warranted because his audience might think of him as an engineer when he was not a licensed engineer. (*Id.*)

Following the hearing, the Committee sent another settlement offer stating the same violations with the request that Marohn agree he made an untruthful statement and pay a $500 fine. (Compl., Ex. 9 at 67–68, May 18, 2021, Docket No. 1-1.) Marohn

- 4 -

again refused to sign the stipulation, but indicated he would sign if the Board removed all reference to dishonest behavior, misrepresentations, or false statements, acknowledged that the lapse in his license was inadvertent, and stated that he had not been involved in the practice of engineering.  (Compl., Ex. 10 at 73, May 18, 2021, Docket No. 1-1.)  The Committee refused and resent the same stipulation.  (Compl., Ex. 11 at 75, May 18, 2021, Docket No. 1-1.)  Additionally, the Board stated that if Marohn did not agree to the terms of the stipulation by May 11, 2021, the Board would proceed to initiate a contested case before OAH.  (*Id.*)  Marohn brought this action and the Board commenced a contested case before the OAH.

## II.   PROCEDURAL HISTORY

Marohn filed this action on May 18, 2021 seeking a declaration that Minn. Stat. § 326.02 is unconstitutional as applied to Marohn, an injunction against the Board prohibiting application of the statute to him, and an award of attorney's fees.  (Compl. at 20.)  On June 8, 2021 the Board moved to dismiss the Complaint, arguing that the *Younger* abstention doctrine applies or, in the alternative, that Plaintiff failed to state a plausible claim for relief.  (Motion to Dismiss, June 8, 2021, Docket No. 7.)  Following the filing of this action, the Board commenced a contested case proceeding before the OAH.  (Defs.' Memo. Supp. Mot. Dismiss at 4, June 8, 2021, Docket No. 9.)

**DISCUSSION**

**I.   STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**II.   ANALYSIS**

"The *Younger* abstention doctrine, as it has evolved, provides that federal courts should abstain from exercising jurisdiction when (1) there is an ongoing state proceeding,

(2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010); *Younger v. Harris*, 401 U.S. 37, 43–45 (1971). A federal court, however, may still hear a case that satisfies the *Plouffe* elements, if there is a patently and flagrantly unconstitutional statute at issue or if a federal plaintiff can demonstrate that a state proceeding involves bad faith. *Plouffe*, 606 F.3d at 893.

### A. Ongoing State Proceeding

The *Younger* abstention doctrine applies to civil enforcement proceedings. *Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 552 (8th Cir. 2018). To qualify as a civil enforcement proceeding, the proceeding must have been initiated by the state in its sovereign capacity; involve sanctions against the federal plaintiff for some wrongful act; and include an investigation, often culminating in formal charges. *Id.* at 552–53. In *Peterson*, the court found that a contested case proceeding before an administrative law judge at the Minnesota OAH qualified as a civil proceeding akin to criminal prosecution. *Id.* at 553.

Here, the contested case proceeding was initiated by the Board after an investigation into Marohn's actions. The contested case hearing will be heard by an administrative law judge at OAH and may result in sanctions. The fact that this action was filed before the contested case proceeding commenced is not material because there have been no "proceedings of substance on the merits" yet in this Court. *Hicks v.*

*Miranda*, 422 U.S. 332, 349 (1975). Thus, the proceedings at OAH satisfy the first factor of *Younger* abstention.

### B. Important State Interest

The Court must consider whether the state proceeding implicates an important state interest. *Plouffe*, 606 F.3d at 892. In evaluating a state's interest in a proceeding, courts look at the proceeding in the most general sense rather than a narrow analysis of the state's interest in the outcome of the particular case. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989). In considering the importance of the proceeding to the state, the Court should look to whether the action concerns a central sovereign function of the state government such that the "exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987).

The state has a significant interest in regulating the professional conduct of its licensees and the titles they use. The Supreme Court has recognized the extremely important state interest in actions regulating and disciplining an attorney's professional conduct. *Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982). Other circuits have found the conduct of other professionals similarly important to the state. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1165 (10th Cir. 1999). The conduct of engineers is also a significant state interest.

Marohn asserts that a legitimate state interest is not implicated here because Marohn was not a professional engineer at the time of the Complaint, nor was he involved in the practice of engineering, so the state was not regulating professionals in this particular instance. However, Marohn's position fails to examine the state interest in the most general sense rather than in a particular case. *New Orleans Pub. Serv., Inc.*, 491 U.S. at 365. The state has an interest in disciplining the wrongful use of the term professional engineer in order to ensure the safe and well-regulated practice of engineering. The Court need not consider whether the facts of this particular case make Marohn an inappropriate target for discipline. Thus, an important state interest is implicated here.

### C. Adequate Opportunity

Regarding the third factor, "it is sufficient . . . that constitutional claims may be raised in state-court judicial review of an administrative proceeding." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986). Both parties recognize that the contested case before the OAH will give Marohn the opportunity to raise his defenses, and in the event that he is unsuccessful before the OAH he will have the opportunity to appeal to the court of appeals. Therefore, the *Younger* abstention doctrine requirements are facially satisfied, and the Court should abstain from adjudicating Plaintiff's claims unless an exception applies.

### D. Exceptions to the *Younger* Abstention Doctrine

Marohn asserts that two exceptions to the *Younger* abstention doctrine apply here: (1) the patently and flagrantly unconstitutional exception, and (2) the bad faith exception. If an exception applies, dismissal of this action under *Younger* is unwarranted. Neither exception applies.

#### 1. Patently and Flagrantly Unconstitutional Exception

The patently and flagrantly unconstitutional exception to the *Younger* doctrine is extremely narrow. *Plouffe*, 606 F.3d at 894. Under the patently and flagrantly unconstitutional exception, a federal court should refrain from abstaining under *Younger* where a statute is "flagrantly and patently unconstitutional in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Id.* (internal quotations omitted). To satisfy such a stringent requirement the statutory provisions challenged must be relatively plain and unambiguous. *Central Ave. News, Inc. v. Minot*, 651 F.2d 565, 570 (8th Cir. 1981). Moreover, the plaintiff carries "a strong burden in establishing the overwhelming unconstitutionality of the state statute." *Id.*

Marohn asserts that Minn. Stat. § 326.02 subd. 3 is unconstitutional as applied to him. (Compl. at ¶¶ 52–56.) While Marohn's briefing suggests that the statute is facially overbroad, that claim is not brought in the Complaint, nor is it fully developed in Marohn's brief. (Pl.'s Memo. in Opp. to Mot. to Dismiss, at 38, July 1, 2021, Docket No. 14.) Marohn

fails to annunciate how the statute is blatantly unconstitutional.  At no point does Marohn contend that the statute would be unconstitutional "against whomever an effort might be made to apply it".  *Plouffe*, 606 F.3d at 894.  In fact, by bringing an 'as applied challenge,' Marohn appears to concede that the statute would be constitutional when brought against someone actively practicing engineering.  Marohn's argument that he should prevail in his as applied challenge fails to meet the heavy burden necessary to warrant applying the patently and flagrantly unconstitutional exception.

### 2.  Bad Faith Exception

The bad faith exception allows a federal court to refrain from abstaining under *Younger* where a state proceeding is initiated in bad faith or to harass the defendant. *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988).  Bad faith exists when state officials initiate proceedings without hope of obtaining a valid disposition or, in extreme circumstances, where irreparable injury can be shown.  *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).  Where the action was brought in retaliation for the exercise of a constitutional right, abstention is not appropriate even if a court could validly rule in the State's favor. *Lewellen v. Raff*, 843 F.2d at 1109; *accord Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984) (noting that retaliation must be a major motivating factor and have played a prominent role in the decision to prosecute).

Marohn claims that the action was brought in retaliation for his political speech and therefore the *Younger* abstention doctrine should not apply.  Marohn, however, pled

no facts that indicated that the Board exhibited any animus towards him or that they retaliated against him. The only evidence of bad faith that Marohn alleges are the statements made by the members of the Board's Complaint Committee during the hearing the Committee held to determine whether Marohn should be disciplined. However, regardless of whether the committee member's concern is legitimate, statements expressing concern for Marohn's actions do not suggest bad faith.

Marohn has failed to establish any bad faith or retaliation, thus federal intervention is not warranted. The Court finds that the *Younger* abstention doctrine applies, so the Court must avoid adjudicating Marohn's claims. Accordingly, the Court need not consider whether Marohn failed to state a claim upon which relief may be granted.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court **ABSTAINS** from adjudicating this action.

2. Defendants' Motion to Dismiss [Docket No. 7] is **GRANTED**.

3. This action is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 10, 2021  
at Minneapolis, Minnesota

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court